# IN THE COURT OF APPEALS OF IOWA

No. 19-0588
Filed June 5, 2019

IN THE INTEREST OF M.W.,
Minor Child,

S.W., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

Tammy L. Banning of Juvenile Public Defender's office, Waterloo, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals the juvenile court's order terminating parental rights to her child, M.W., and the denial of her motion for new trial. M.W. was born in April 2018. The juvenile court terminated the mother's rights to that child pursuant to Iowa Code section 232.116(1)(e) and (h) (2018) in March 2019.[1] After the entry of the termination order, the mother moved for a new trial under Iowa Rule of Civil Procedure 1.1004, arguing that a new trial should be granted to address the best interests of both M.W. and her half-sibling, who was born the day of the termination trial in February 2019. That half-sibling is currently the subject of child-in-need-of-assistance (CINA) proceedings. The juvenile court denied her motion, and the mother now appeals both the denial of her new-trial motion and the juvenile court's termination of her parental rights.

## I. Standards of Review

We review termination cases de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "We are not bound by the juvenile court's findings of fact, but we do give them weight." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

Denials of motions for new trial are reviewed for abuse of discretion. *In re Marriage of Wagner*, 604 N.W.2d 605, 609 (Iowa 2000). "A district court abuses its discretion if it rests its ruling on 'clearly untenable or unreasonable grounds.'" *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (quoting *Lawson v. Kurthals*, 792 N.W.2d 251, 258 (Iowa 2010)). Motions for new trial based on newly

---

[1] The court also terminated the parental rights of the child's putative father. The putative father did not contest the termination and does not appeal.

discovered evidence are not favored. *In re D.W.*, 385 N.W.2d 570, 583 (Iowa 1986).

## II. Analysis

### A. Termination of Parental Rights

We use a three-step analysis to review termination of parental rights:

First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.,* 906 N.W.2d 467, 472–73 (Iowa 2018) (citations omitted). The mother does not argue that the state failed to prove the statutory grounds for termination under section 232.116(1)(e) and (h), nor does she argue that any of the factors weighing against termination under section 232.116(3) apply. As such, we need not consider either 232.116(1) or (3) here. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother only challenges the juvenile court's best-interest determination under section 232.116(2). She maintains delaying permanency to give her an additional six months to work toward reunification is in M.W.'s best interests. *See* Iowa Code § 232.104(2)(b) (allowing the court to defer permanency for six months upon determining the need for removal will no longer exist at the end of the delay). In considering the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-

term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

After reviewing the record, we conclude that termination of parental rights without a delay is in M.W.'s best interest. The mother has had nearly eight months to learn how to properly care for M.W. She has yet to show either the interest or ability to do so. Of the eighty-six supervised visits with M.W. available to the mother, she attended only thirty-four. At the visits she did attend, Iowa Department of Humans Services (DHS) personnel often had to urge her to attend to M.W.'s most basic needs, which she did not appear to recognize on her own. While the mother attended a number of parenting classes, the record does not reflect any meaningful improvement in her parenting skills from these classes. DHS staff reported the mother was not able to recall or apply parenting skills learned in class at the next visit with M.W. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (quoting *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014)); *accord In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) ("Children simply cannot wait for responsible parenting." (quoting *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)).

Other factors also weigh against granting a deferral of permanency. The mother has a number of significant mental-health issues, and she has not actively sought treatment or medication for any of them. She has been diagnosed as having bipolar disorder, ADHD, multiple personality disorder, and schizophrenia. The mother does not take medication for any of her conditions

and does not attend mental-health therapy. The mother also does not appear to have the financial means to provide for M.W. DHS noted in its report to the juvenile court for the termination-of-parental-rights hearing that the mother "struggles to take care of herself" and lacks the ability to "provide for [M.W.'s] basic needs." Finally, the record suggests that the mother's current significant other—with whom the mother lives—does not want M.W. staying with them, and it is unclear whether that home would be a safe and nurturing environment for M.W. An additional six months would not remedy these concerns.

The mother raises the presence of M.W.'s half-sibling as an argument against terminating the mother's parental rights in regard to M.W.[2] We recognize an interest in keeping siblings together. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). However, that interest does not override primary consideration of the safety and well-being of each child individually. *Id.* The fact that M.W. now has a half-sibling does not mean that it is in M.W.'s best interest for the termination to be deferred for six months. There is no relationship between M.W. and the half-sibling. M.W. has been in foster care since before the half-sibling was born, and it is unclear whether the two have ever even met. *See id.* ("[I]t would not be in [the child]'s best interest to now seek to establish a relationship with a sibling he does not even know."). We do not believe that the juvenile court's termination of the mother's parental rights to M.W. needs to be reversed because of the presence of the half-sibling.

---

[2] The mother only discusses the presence of M.W.'s half-sibling in the context of her motion for new trial, but we discuss it here because the presence of the half-sibling is relevant to the best-interest analysis.

**B. Denial of Motion for New Trial**

The mother also argues that the existence of M.W.'s half-sibling is new evidence under rule 1.1004(7) and the juvenile court erred in denying her motion for a new trial under that provision. We disagree. To succeed on a motion for new trial under rule 1.1004(7), a party must show that three prongs have been met:

> (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted.

*Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995); *see* Iowa R. Civ. P. 1.1004(7). The mother has not met this burden. The record demonstrates that the juvenile court was aware that the mother was pregnant with M.W.'s half-sibling. The juvenile court noted the mother's pregnancy in its November 2018 dispositional order. The mother then testified during the February 2019 termination hearing that she was pregnant with her current significant other's child. The mother's pregnancy was not "newly discovered," and neither was it evidence that could not have been discovered prior to the conclusion of the trial. As such, the fact that M.W. would soon have a half-sibling does not constitute newly discovered material evidence within the meaning of rule 1.1004(7). We need not consider the second and third prongs. The juvenile court did not abuse its discretion in denying the mother's motion for new trial.

**AFFIRMED.**